IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DOUGLAS DRIBBEN**, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**HOMEFIX CUSTOM REMODELING, CORP.** )<br>)<br>Defendant. )<br>) | **CASE NO.: 1:22-cv-01143-SAG** |

## HOMEFIX CUSTOM REMODELING, CORP.'S MEMORANDUM IN SUPPORT OF SECOND MOTION TO EXTEND DISCOVERY BIFURCATION PERIOD

Homefix Custom Remodeling, Corp. ("**Defendant**") respectfully submits this memorandum in support of its Second Motion to Extend Discovery Bifurcation Period (the "**Motion**") [D.E. 39], filed on February 8, 2023, and states the following:

On November 14, 2022, the Court entered an Order [D.E. 30] (the "**Order**") temporarily bifurcating discovery in this action to focus on specific, narrow factual questions that are potentially dispositive of Plaintiff's individual claim. On January 5, 2023, the Court extended the bifurcation deadline to February 8, 2023 [D.E. 37] in light of the difficult personal circumstances of Defendant's counsel.

As noted in Defendant's prior Motion to Extend Discovery Bifurcation Period, critical documents available only from third parties have proven more complicated to obtain than originally expected. Such difficulties have continued through the extended period of bifurcated discovery. Despite the diligent efforts of Defendant's counsel, critical discovery pertaining to the telephone records of a business telephone line utilized by Plaintiff (the "**9498 Number**") that were expected to be easily accessible are still out of reach, **through no fault of Defendant**.

1

Specifically, because the records at issue—telephone call log data for an agency of the United States Army—are controlled or pertain to an entity within the U.S. Military, those records are governed by a different set of disclosure requirements than ordinary civilian or business records. As a result, special, more onerous, procedures are imposed upon subpoena requests. In fact, even the identity of the records custodian is unknown to officials of the very U.S. Army Agency to which the 9498 Number pertains. Likewise, additional judicial oversight over the records sought appears to be required, at least according to the agency officials to which Defendant has directed its efforts to obtain the pertinent records.

As a result of the above-referenced procedural obstacles, Defendant requires additional time to obtain what would otherwise constitute readily available discovery materials. The additional time needed in this instance is necessitated solely because of the administrative hurdles posed by Plaintiff's status as an employee of the United States Army Claims Service (the "**USARCS**"). It bears noting that that the Court found the records at issue so potentially compelling as to warrant the bifurcation of discovery in this case already ordered. Thus, to stray now from the Court's original intention in ordering bifurcation should not be considered lightly—all grounds supporting bifurcation remain in full effect.

Beyond the above, the requested extension is reasonable, made in good faith, not made for the purpose of delay, and will *not* prejudice any party to this action. Accordingly, Defendant respectfully submits that the forgoing constitutes good cause to grant the brief extension requested.

### **ARGUMENT**

The bifurcation period should be extended because the value of, and the judicial/litigant economy to be gained by, determining whether the Plaintiff is capable of maintaining a potentially viable claim against Defendant outweighs *by far* the time, cost, and expense of proceeding to class

discovery in this case. The Court has already established by multiple rulings that a pause to focus on such narrow facts in these proceedings is warranted to test whether it can be shown Mr. Dribben's claims are not factually supportable.

The discovery sought in the several identical subpoenas pursued by Defendant to ascertain this threshold issue, though, has proven persistently elusive, despite more than diligent follow up by Defendant. Although Defendant has confirmed that the 9498 Number is a telephone number associated with Fort Meade, and, more specifically, the USARCS office located at Fort Meade, complications and procedural hurdles continue to delay the production of telephone records in response to Defendant's subpoenas. These delays are all despite Defendant being in regular contact with a high-level officer of the USARCS, Major Keith Petty, who has the title "Executive Office and Chief" of the Tort Claims division of the USARCS.

Major Petty and the undersigned have engaged in over a dozen contacts over the last several weeks, including telephone calls and emails. And Despite Major Petty's rank, experience, and diligent efforts, he has been unable to uncover the identity of the records custodian for data pertaining to the 9498 Number, a critical data point to move forward.

Major Petty *was* able to provide Defendant with other important information governing any request for the 9498 Number call log records. Specifically, any subpoena must comply with certain requirements under C.F.R. § 516.41(d) and *Touhy v. Ragen*, 340 U.S. 462 (1951) and its progeny. Likewise, Major Petty advised that any subpoena would likely require issuance by this Court of an order permitting disclosure under the Privacy Act of 1974. All of these elements (identity of custodian, a *Touhy* request, and a Privacy Act Order) are required to secure production of the telephone records sought. The continued need thereof due to no fault of Defendant and despite diligent efforts by Defendant constitutes good cause to grant the extension requested.

**Identifying the Proper Records Custodian for Plaintiff's Business Telephone Line**

As set forth in Defendant's previous Motion to Extend the Discovery Bifurcation Period, Defendant has been diligently pursuing information concerning the 9498 Number since its earliest written discovery requests to Plaintiff. In late October, Plaintiff identified Verizon Wireless as the carrier from which call log records for the 9498 Number should be obtained. A subpoena to Verizon Wireless was issued and served on November 10, 2022. The response from Verizon Wireless noted that it had no documents responsive to the subpoena as it was not the telephone service carrier for the 9498 Number. Verizon further noted that the 9498 Number could possibly be serviced by "Teleport Communications aka Level 3 Communications".

Based on Defendant's research, Teleport Communications and Level 3 Communications appeared to be entirely different entities. Plaintiff's counsel did not respond to requests by the undersigned to seek clarification, but Defendant's further research into the matter indicated that the number was likely affiliated with the Fort Meade military property. On December 28, 2022, Defendant issued four subpoenas in an effort to track down the pertinent call log records: one to Teleport, another to Level 3, and one each to the USARCS and the JAG office at Fort Meade.

Although Defendant has engaged for weeks with high-ranking officials at the USARCS and other agencies within the Fort Meade military complex, the identity of the proper records custodian is still unknown. A new lead that may shed light on the question was provided late afternoon today, February 8, 2008, by Major Petty. Defendant will promptly follow up in the hopes of finally bottoming out the question.

### Defendant's Diligence in Seeking the Pertinent Documents Since the First Extension of the Discovery Bifurcation Period

Since the Court granted the first extension of the bifurcation period:

1. Defendant learned that Teleport Communications had been acquired by AT&T, but that since the subpoena did not identify a properly named AT&T entity, it objected to the subpoena. Defendant issued a new/separate subpoena to AT&T on January 3, 2023;

2. Lumen Technologies, f/k/a CenturyLink, responded to the subpoena directed to Level 3 Communications by stating that the 9498 Number was not affiliated with that company, and therefore Lumen did not possess any documents responsive to the subpoena;

3. Between January 10 and February 8, 2023, Defendant's counsel and its team have initiated, received, or otherwise participated in *dozens* of telephone calls, emails, and other contacts with relevant U.S. Military personnel and related entities in an effort to obtain information that will ultimately lead to production of the key records.

4. These contacts have spanned the following United States Military Officials:[1]

    a. USARCS Commander, Col. David Anglin;

    b. Maj. Keith Petty;

    c. Attorney-Advisory, Ashley Jolissaint, Chief, Claims Division, Office of the Staff Judge Advocate;

    d. Steve Goodman, Telecommunications Specialist, Fort Meade network Enterprise Center; and

    e. Other operators, agents, and officials of Fort Meade and related military offices.

---

[1] A composite exhibit reflecting a sampling of the relevant email communications referenced here is attached as **Composite Exhibit "A"**.

As part of such contacts:

1. On January 19, 2023, Commander Anglin confirmed that the 9498 Number "is a Fort Meade number . . .";

2. On January 24, 2023, Major Petty conveyed that he would have to issue a denial letter in response to the subpoena, but that he intended to continue working with counsel to get the information requested properly processed, including obtaining and providing the identity of the proper records custodian. The denial letter set forth a number of special procedures required to obtain records from or within the control of a U.S. Military entity;

3. On February 3, 2023, Defendants' counsel followed up with Major Petty asking for an update on the identity of the property records custodian. Major Petty conveyed, for the first time, that the USARCS was "definitely NOT" the proper records custodian to which the subpoena should be directed;

4. The undersigned followed up with Major Petty on February 7, 2023 asking again for the identity of the proper records custodian, and noting that Defendant was eager to serve its revised subpoena package but was awaiting this last piece of information; and,

5. On February 8, 2023, Maj. Petty responded by email. And while the response did not provide the identity of the proper records custodian, it did provide the following information:

> Here is the email for the 7th Signal SJA office. They should help you get to the right place.
>
> OCJA7SIGCMDT@army.mil
>
> You might need to first ask which org to address it to (7th SIG, etc.).
>
> I hope this helps.

**As reflected above, despite Defendant's persistent follow up, the identity of the proper records custodian or telephone service provider for the 9498 Number remains unknown**.

As soon as Defendant learns the proper target of its subpoena seeking the 9498 Number records, it will be able to re-submit its subpoena according to the more rigorous procedures imposed upon records pertaining to a U.S. Military Installation. That said, once the identity of the proper subpoena target is learned, Defendant still must undertake action over and above the norm to gain access to the critical documents sought.

Defendant must submit a subpoena request that identifies the nature of the proceeding and the nature and relevance of the official information sought, in compliance with 32 C.F.R. § 516.41(d) and *Touhy v. Ragen*, 340 U.S. 462 (1951). To resolve this issue, Defendant already has prepared a draft subpoena package that includes a cover letter to the appropriate (still unknown) agency explaining the nature of the action and relevance of the telephone records.

Second, and implicating a more elaborate procedure, Major Petty note that the requested information is likely protected by the Privacy Act of 1974, and therefore requires a court order. To address this issue, Defendant has already prepared a draft Motion to Authorize Disclosure under the Privacy Act of 1974.[2] However, that motion cannot be submitted for consideration until certain last pertinent facts are confirmed, including the identity of the records custodian to which any such Privacy Act order must be directed.

Accordingly, while Defendant has certainly made progress in obtaining the highly relevant evidence that may be dispositive of Plaintiff's claims, additional procedural and administrative hurdles must be overcome before such records may be obtained from the U.S. Army. Defendant's counsel has actively and diligently sought to overcome such obstacles, but additional time is

---

[2] Defendant has even reached out to counsel for Plaintiff, Raina Borrelli, to confer in good faith regarding whether the expected Privacy Act motion could be filed as unopposed. Plaintiff **does not agree** to the relief that will be sought in the Privacy Act Motion.

7

required to satisfy the requirements of the USARCS or other relevant custodian to release them. Defendant is hopeful that these issues can be resolved within 30 days.

Plaintiff opposes the instant motion and the expected Privacy Act motion in part on the suggestion that there is no tangible basis to pursue records of the 9498 Number. That suggestion is demonstrably inaccurate. Defendant has produced screen shots from its own and other systems showing the 9498 Number was associated with Plaintiff's name and address when calls to Plaintiff are alleged to have been made. Defendant has also produced emails and telephone call recordings in which Plaintiff makes specific reference to the 9498 Number in his contacts with Defendant.

Moreover, the Court has already ruled that the facts and circumstances of this case warrant focusing discovery on the narrow issues pertaining to the 9498 Number and Plaintiff's individual claim. *Those circumstances have not changed*.

Accordingly, an additional 30-day extension of time to account for the extraordinary hurdles required to access telephone log records which, but for Plaintiff's employment with the military, would have already long since been secured, is readily justified when weighed against the time, expense, and burden on the Court and all parties of embarking on class-wide discovery.

### CERTIFICATE OF LOCAL RULE 105(9) GOOD FAITH CONFERENCE

Between January 31, 2023 and February 6, 2023, Gabriel D. Pinilla, Esq., on behalf of Defendant, conferred in good faith via email with Raina C. Borrelli, Esq., counsel for Plaintiff regarding the extension herein requested. Ms. Borrelli conveyed that **Plaintiff opposes** the relief sought.

## CONCLUSION

Based on all of the foregoing, Defendant respectfully requests that the Court extend the bifurcation period by 30 days, together with any other deadlines pertaining to the bifurcation period, and grant any other or further relief that the Court may deem just and proper.

Respectfully Submitted: February 8, 2023.

>  */s/ Gabriel D. Pinilla*
> Gabriel D. Pinilla
> Bar No. 22373
> Louis M. Ursini, III*
> Florida Bar No. 355940
> *Admitted pro hac vice*
> **ADAMS AND REESE, LLP**
> 2301 Blake Street, Suite 100
> Denver, CO 80205
> Telephone: 813-227-5516
> Facsimile: 813-402-2887
> Gabriel.Pinilla@arlaw.com
> Louis.Ursini@arlaw.com
> Alisyn.Bukowski@arlaw.com
> Lisa.Stallard@arlaw.com
> *Counsel for Homefix Custom Remodeling, Corp.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2023 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will automatically serve a copy via electronic mail to all counsel of record.

> */s/ Gabriel D. Pinilla*
> Gabriel D. Pinilla
> Bar No. 22373

**SERVICE LIST**

Attorneys for Douglas Dribben:

John McGowan
KINNER & McGOWAN, PLLC
413 East Capitol Street SE, First Floor
Washington, D.C. 20003
Email: jmcgowan@kinnermcgowan.com
Telephone: (202) 846-7148

Raina C. Borrelli
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Email: raina@turkestrauss.com
Telephone: (608) 237-1775
Facsimile: (608) 509-4423